UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CAREN C.,[1]

    **Plaintiff,**

v.

FRANK BISIGNANO,
**Commissioner of Social Security,**

    **Defendant.**

Case No. 2:23-cv-2794
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Caren C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On June 12, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since December 28, 2017. R. 112, 127, 221–22. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. Rule Civ. P. 25(d).

1

upon reconsideration. R. 130–34, 136–38. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 139–40. ALJ Theresa Merrill held an initial hearing on March 12, 2020; because Plaintiff was not represented, the ALJ advised Plaintiff of her right to counsel and rescheduled the hearing to provide an opportunity to obtain outstanding medical records and counsel. R. 46–64 The ALJ held a supplemental hearing on July 9, 2020, at which Plaintiff, again without counsel, testified, as did a vocational expert. R. 65–102. In a decision dated August 11, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 28, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 21–34 ("2020 decision"). That decision became final when the Appeals Council declined review on April 26, 2021. R. 1–7. Plaintiff timely filed an appeal pursuant to 42 U.S.C. § 405(g), and on March 31, 2022, this Court found that substantial evidence did not support the 2020 decision and remanded the case for further proceedings. *Caren C. v. Comm'r of Soc. Sec.*, 2:21-cv-10992 (D.N.J. Mar. 30, 2022); R. 1100–12); *see also* R. 1113.

On September 13, 2022, ALJ Marguerite Toland held a hearing on remand, at which Plaintiff, who was now represented by counsel, testified, as did a vocational expert. R. 1062–99. In a decision dated February 24, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 28, 2017, Plaintiff's alleged disability onset date, through March 31, 2022, the date on which Plaintiff was last insured. R. 1039–55. On May 23, 2023, Plaintiff filed this appeal pursuant to 42 U.S.C. § 405(g), 1383(c)(3). ECF No. 1. On April 5, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules

2

of Civil Procedure. ECF No. 10.³ On April 12, 2024, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different

---

³The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

5

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ's 2023 DECISION AND APPELLATE ISSUES

Plaintiff was 48 years old on March 31, 2022, the date on which she was last insured for disability insurance benefits. R. 1053. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 28, 2017, Plaintiff's alleged disability onset date, and her date last insured. R. 1041.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: chronic obstructive pulmonary disease/asthma; post-traumatic stress disorder ("PTSD"); chronic

recurrent major depressive disorder; and generalized anxiety disorder with panic attacks. R. 1042. The ALJ also found that the following impairments were not severe medically determinable impairments: hypertension, coronary artery disease, atrial fibrillation, back, neck and shoulder impairments, neuropathy, migraine headaches, and obesity. R. 1042–43.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 1043–45.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows: she cannot climb ropes, ladders or scaffolds or work at heights. She cannot operate dangerous machinery (defined as machines that cut or shear). She can only occasionally stoop. She can perform no more than occasional overhead lifting and reaching. She is limited to no more than frequent handling. She must avoid concentrated exposure to dust, fumes, pulmonary irritants and temperature extremes. She would be limited to low stress work (defined as unskilled work involving simple, routine tasks and having no fast production rate pace such as assembly line work). She should have no interaction with the public, and no more than occasional, superficial interaction with coworkers.

R. 1045. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a medical assistant, warehouse supervisor, and merchandise marker. R. 1053.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as an electrical assembler, a solderer, and a small parts assembler–existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 1054–55. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 28, 2017, her alleged disability onset date, through March 31, 2022, the date on which she was last insured. R. 1055.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and argues that the

ALJ violated the Court's 2022 Remand Order; she asks that the 2023 decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Initial Brief,* ECF No. 6; *Plaintiff's Reply Brief*, ECF No. 9. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 8.

### IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

On April 1, 2021, Christopher Williamson, Psy.D., reviewed the record and prepared the following report:

> At your request, I took the opportunity to review the above mentioned claimant's application for disability, her voluminous medical records and subsequent denial of disability benefits. More specifically, I focused on the mental health records including but not limited to treatment notes/reports of Dr. Arroyo, Report of Dr. Rakkar, report of Dr. Sabol and extensive treatment notes from Saint Joseph's Hospital. The following is a report of my findings.
>
> After a review of the above noted data, it appears that the claimant, as evidenced in significant medical documentation, *suffers from moderate to severe levels of psychiatric impairment.* It is agreed upon, that the claimant has suffered a horrific trauma history including being sexually molested by her father in childhood. She later went on to be involved in two separate long term relationships that resulted in extensive domestic violence allegations. The above noted trauma resulting in what was consistently diagnosed with Post Traumatic Stress Disorder (PTSD). The symptoms exacerbated by the alleged sexual molestation of one of the client's children by her prior abuser. Her diagnosis does not appear to be in question, nor does the diagnosis of Major Depressive Disorder and Generalized Anxiety Disorder (with or without Panic attacks). Her symptoms were so severe, that she was hospitalized psychiatrically at least three separate times due to suicidal attempts or ideation. The documents cite that there was improvement from said hospitalization, one would hope that improvement during the hospitalization and would be anticipated as a treatment goal for consideration for discharge and not a contributing reason for denial of benefits.
>
> Medical records would appear to consistently support the diagnosis of PTSD, Major Depression and Anxiety. Further review of medical documentation and treatment notes would suggest and indicate that the *claimant had difficulties interacting effectively with others, including coworkers, on occasion having to*

> *leave work. These instances became focuses on treatment for conflict resolution and coping with issues of anger management which were consistent themes in treatment.* It was suggested that *her extensive trauma history may have been contributing to her struggles interacting effectively with others, resulting in work and social discomfort.* It was also indicated that *she was reluctant to leave her house due to persistent fears and anxieties.* Records suggest that she struggled with issues of motivation and lack of joy in activities. *She became reclusive as a results* [sic]. It was further documented that *she had limited concern with ADL's such as a desire to bath and get changed at home.* She had to be encouraged by her children. She had no joy in tasks of daily living. Furthermore, *the fact that she was able to get along with her doctors is not clinically significant.* It is the goal to establish a trusting and nurturing therapeutic environment, especially when dealing with severe trauma survivors. Furthermore, her ability to relay information about her health and history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, are *not suggestive or indicative of a higher level of function, cognitively and/or emotionally. The medical records may suggest that she has good rapport with providers (as to be expected), the records also suggest and support impaired social interactions at home and in the community, to the point where she had to reportedly be with another family member to leave the home.* As noted from a review of the above documents, and citing but a few examples of the *extreme and chronic nature of her psychiatric illness*, it would appear *the claimant, based on a review of relevant dated documentations, consistently exhibited marked psychiatric impairment impacting on cognitive, emotional, and social realms.*

R. 1526–28 (emphasis added).

### V.  DISCUSSION

Plaintiff challenges, *inter alia*, the ALJ's finding at step three of the sequential evaluation as it relates to her mental impairments—*i.e.*, that Plaintiff's mental impairments neither meet nor medically equal Listings 12.04, 12.06, or 12.15. *Plaintiff's Initial Brief*, ECF No. 6, pp. 13–29; *Plaintiff's Reply Brief*, ECF No. 9, pp. 2–11. For the reasons that follow, the Court concludes that this issue requires remand.

At step three, an ALJ considers whether any of the claimant's medically determinable impairments, or the combination thereof, meets or medically equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that

manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets or equals a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

At step two of the sequential evaluation in the 2023 decision, the ALJ determined that Plaintiff suffered the severe impairments of, *inter alia*, PTSD; chronic recurrent major depressive disorder; and generalized anxiety disorder with panic attacks. R. 1042. The ALJ determined at step three that these impairments, considered singly or in combination, neither met nor medically equaled Listing 12.04, which addresses depressive, bipolar and related disorders, Listing 12.06, which addresses anxiety and obsessive-compulsive disorders, or Listing 12.15, which addresses trauma-and stressor-related disorders. R. 1043–45. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.15. In order to meet any of these Listings, a claimant must satisfy the criteria in

paragraph A and either the paragraph B or paragraph C criteria of these Listings. *Id*. The paragraph B[4] criteria of Listings 12.04, 12.06, and 12.15 are identical and are satisfied when a claimant has an extreme limitation[5] in one, or a marked limitation[6] in two, of the following four mental functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at §§ 12.03B, 12.04B, § 12.15B.

In considering the paragraph B criteria of these Listings, the ALJ found that Plaintiff had only a "mild" limitation in the area of understanding, remembering, or applying information, and in the area of concentrating, persisting, or maintaining pace; and found "moderate" limitations in the two remaining areas—*i.e.*, interacting with others and adapting or managing oneself. R. 1044–45. Plaintiff specifically challenges the ALJ's finding that Plaintiff had only moderate limitations in these two areas of functioning. *Plaintiff's Initial Brief*, ECF No. 6, pp. 13–29; *Plaintiff's Reply Brief*, ECF No. 9, pp. 2–11. The Court addresses these challenges in turn.

### A.   Interaction with Others

The Listings explain the function of interacting with others as follows:

> This area of mental functioning refers to the *abilities to relate to and work with supervisors, co-workers, and the public*. Examples include: cooperating with others; asking for help when needed; *handling conflicts with others*; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and *keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness*. These

---

[4] Plaintiff does not challenge the ALJ's findings regarding the paragraph A or paragraph C criteria.
[5] An "extreme" limitation means that the claimant is unable to function in this area independently, appropriately, effectively, and on a sustained basis. *Id*. at § 12.00F2e.
[6] A "marked" limitation means that the claimant is seriously limited in her ability to function independently, appropriately, effectively and on a sustained basis in a specified area. *Id*. at § 12.00F2d.

> examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E2 (emphasis added). In the present case, the ALJ found only a moderate limitation in this area, reasoning as follows:

> In interacting with others, the claimant has a moderate limitation. She reported difficulty getting along with others (Ex. 7E at 5). She testified to no regular social activities and not going out alone, but goes shopping twice a month, does laundry outside the house, and goes out to eat occasionally (Ex. 7E; Hearing Testimony). In December of 2018, she reported she can go to a store or office by herself (Ex. 3F at 2-3). In January of 2020, she reported she can go to a store by herself (Ex. 6F at 2). In late 2021, she reported she goes out as needed for chores (Ex. 14F at 71). Medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments, but reported some irritability (See Exs. 2F; 5F; 10F; 12F; 13F). In light of the foregoing, the undersigned finds the claimant has no more than a moderate limitation in interacting with others.

R. 1044.

Plaintiff challenges this finding, arguing that the evidence establishes that Plaintiff has a marked or extreme limitation in this area of functioning. *Plaintiff's Initial Brief*, ECF No. 6, pp. 13–27; *Plaintiff's Reply Brief*, ECF No. 9, pp. 5–11. Plaintiff specifically contends that the ALJ omitted relevant evidence regarding Plaintiff's limitations in her social interactions, which suggest a greater than moderate limitation of function. *Id*. (citations omitted). Plaintiff further contends that the ALJ wrongly emphasized irrelevant details, such as Plaintiff's rapport with her medical examiners, which Dr. Williamson characterized as "not clinically significant". *Id*. (citing, *inter alia*, R. 1527). Plaintiff therefore argues that the ALJ failed to adequately explain this conclusion and that substantial evidence does not support the ALJ's finding of only a moderate limitation in Plaintiff's ability to interact with others. *Id*. The Commissioner, however, argues that the ALJ appropriately considered the record and that substantial evidence supports the ALJ's conclusion that Plaintiff was no more than moderately limited in her ability to interact

13

with others. *Defendant's Brief*, ECF No. 8. The Court concludes that the record requires remand on this issue.

As noted above, the ALJ relied in large part on Plaintiff's "good rapport with providers" and "good interactions with non-medical staff, and [the fact that Plaintiff] appeared comfortable during appointments[.]" R. 1044. However, the United States Court of Appeals for the Third Circuit has noted that, for an individual "who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Subpart P, § 12.00E2 (instructing, *inter alia*, that the area of mental functioning of interacting with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public"); *Hull v. Berryhill*, No. 3:18-CV-0006, 2018 WL 3546555, at *7–8 (M.D. Pa. July 24, 2018) ("*Morales* guidance indicates that ALJ Burock's reliance on Plaintiff's ability to 'relate well in the clinical setting' and be cooperative and adequately conversant in that setting does not provide support for his determination at step three that Plaintiff has moderate limitations in interacting with others."). Notably, the ALJ acknowledged that Plaintiff "reported difficulty getting along with others" and that she "testified to no regular social activities[.]" R. 1044. The ALJ also acknowledged in other parts of her 2023 decision that, in November 2017, Plaintiff "reported explosive anger with a coworker and leaving work early[.]" R. 1048. The ALJ further noted that Plaintiff reported "angry outbursts, as well as crying spells," R. 1049, and "being easily upset and aggravated, being uncomfortable around crowds of people[,]" *id*., that "she does not engage in regular social activities[,]" *id*., and that she "does not have any friends[.]" *Id*.

Moreover, although the ALJ referred to Plaintiff's function report as well as to examination and treatment notes that reflect Plaintiff's good rapport and interactions with

14

providers and staff, the ALJ was silent as to other information regarding Plaintiff's difficulty in interacting with people. For example, Plaintiff indicated in her function report that she has problems getting along with others, explaining, "sometimes I will get really emotionally [sic] or really mad[.]" R. 444. She also indicated that she was fired or laid off from one job because of problems getting along with other people: "I was grab[bed] by a nurse and I scream[ed] at hi[m] to let me go[.]" R. 446. In January 2018, Michael Melendez, L.C.S.W., Plaintiff's therapist, noted that Plaintiff had reported "that she has been 'referred a package' by her employer to not return to work after her allegation of being grabbed by a fellow employee." R. 498. In therapy notes from January 2021, Mr. Melendez noted, *inter alia*, that Plaintiff "reported on a recent situation during which 'I lost it' with a visitor to her home" during which that visitor's "'tone of voice and disrespect' triggered an aggressive verbal response that included threats of physical harm." R. 1473. Although the ALJ found that the record supported "no more than a moderate limitation in interacting with others[,]" the ALJ did not sufficiently explain this conclusion in light of the record evidence detailed above—much of which was not discussed by the ALJ at step three. R. 1044. Notably, the ALJ's RFC determination at step four—*i.e.*, that Plaintiff "can never interact with the public," R. 1045—suggests a greater than moderate limitation in the area of interacting with others. *See Hull*, 2018 WL 3546555, at *7–8 (remanding where, *inter alia*, the ALJ found a moderate limitation in interacting with others but also limited the plaintiff to no public interaction, because the ALJ thus "essentially found in his RFC assessment that Plaintiff had at least a marked limitation in her ability to interact with the general public"). In short, the Court cannot conclude that substantial evidence supports the ALJ's finding of only a moderate limitation in Plaintiff's ability to interact with people where the ALJ relied on a good rapport with providers and medical staff and where she selectively cited evidence that supported this

15

assessment but ignored, without explanation, contrary evidence. *See Jones*, 364 F.3d at 505 (stating that there still must be "sufficient development of the record and explanation of findings to permit meaningful review"); *Morales*, 225 F.3d at 319; *Quinn v. Kijakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *5 (M.D. Pa. Jan. 18, 2022) ("A selective approach to the evidence does not constitute substantial evidence upon which an ALJ may reasonably rely to deny benefits.") (citations omitted); *Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).[7]

### B. Adapting or Managing Oneself

The Listings explain the area of adapting and managing oneself as follows:

This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being *in a work setting*. Examples include: Responding to demands; adapting to changes; *managing your psychologically based symptoms*; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and

---

[7] In finding only a moderate limitation in Plaintiff's ability to interact with others, the ALJ also relied on Plaintiff's activities, *i.e.*, that she "goes shopping twice a month, does laundry outside the house, and goes out to eat occasionally"; "can go to a store or office by herself": "can go to a store by herself" and "goes out as needed for chores[.]" R. 1044 (citations omitted). Even if Plaintiff's ability to occasionally go out in public supports only a moderate limitation in this area of functioning—a questionable proposition in light of the present record in this case—it is not clear to what extent the ALJ's reliance on Plaintiff's interaction with providers and medical staff and her failure to discuss contrary evidence at step three infected her conclusion that Plaintiff was only moderately limited in her ability to interact with others.

> being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E4 (emphasis added). In the present case, the ALJ found only a moderate limitation of functioning in this area, reasoning as follows:

> As for adapting or managing oneself, the claimant has a moderate limitation. She reported problems handling stress and changes in routine (Ex. 7E at 7). However, treatment notes reflect that she is appropriately dressed and groomed for appointments, cooperative with medical staff, and generally compliant with prescribed treatment. She reported she requires assistance with personal care due to physical limitations, goes shopping twice a month, does some household chores, and can manage her finances (Ex. 7E; Hearing Testimony). Based on the foregoing, the undersigned finds the claimant has no more than a moderate limitation in her ability to adapt or manage herself.

R. 1044–45.

Plaintiff challenges this finding, taking the position that the evidence establishes that Plaintiff had a marked or extreme limitation in this area of functioning. *Plaintiff's Initial Brief*, ECF No. 6, pp. 13–27; *Plaintiff's Reply Brief*, ECF No. 9, pp. 5–11. According to Plaintiff, the ALJ improperly focused on irrelevant evidence and omitted relevant evidence regarding Plaintiff's limitations which, Plaintiff argues, support a marked or extreme limitation of function. *Id*. (citations omitted). The Court agrees.

As detailed above, this area of mental functioning considers a claimant's abilities to regulate emotions, control behavior, and maintain well-being in a work setting, including, *inter alia*, managing psychologically based symptoms. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E4. Although the ALJ did not discuss this evidence when considering Plaintiff's ability to adapt or manage herself, *see* R. 1044, this Court has already referred to evidence of Plaintiff's altercation with a co-worker and inability to control her anger in a work setting, and of Plaintiff's loss of a job because of this issue. The Court also detailed above Plaintiff's failure to control herself when

17

she "lost it" with a visitor and verbally threatened that visitor with physical violence. R. 1473. The ALJ noted at step four that Plaintiff reported that she, *inter alia*, has no friends, has no regular social activities, has difficulty managing stress, has anxiety around other people, and is easily upset and aggravated R. 1046, 1049–50. Despite all this evidence, the ALJ concluded at step three that Plaintiff was only moderately limited in the area of adapting or managing herself, because she was appropriately dressed and groomed for appointments, was cooperative with medical staff, was generally compliant with prescribed treatment and, although she required assistance with her personal care because of physical limitations, she went shopping twice a month, performed some household chores, and could handle her finances. R. 1044–45. Without more explanation, the Court cannot understand the ALJ's reasoning in this regard. *See Jones*, 364 F.3d at 505; *Cotter*, 642 F.2d at 704–05 (explaining that the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review"); *Sanford*, 2014 WL 1294710, at *2; *cf. Fermin-Castillo o/b/o B.J.F. v. Kijakazi*, No. 21-CV-01495-RAL, 2022 WL 1774286, at *8 (E.D. Pa. May 31, 2022) ("The contradictory evidence is clearly material to the listing criteria of adapting and managing oneself. The ALJ erred by failing to address and resolve it. This must be remedied on remand.").

Furthermore, the Court cannot conclude that the ALJ's omission, without explanation, of certain evidence and her failure to adequately explain her reasoning in connection with these mental functioning areas is harmless where an extreme limitation in one of those areas or a marked limitation in both of those areas would result in a finding that the paragraph B criteria of Listings 12.04, 12.06, and 12.15 have been met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.06B, and 12.15B. This Court therefore concludes that remand of the matter for further

consideration of these issues is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of the paragraph B criteria, the ALJ again concludes that Plaintiff has not met or medically equaled a listing and ultimately is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

In remanding this case for further proceedings rather than for an award of benefits, the Court is mindful of the lengthy procedural history of Plaintiff's application for benefits. However, to decide otherwise would require this Court to make findings that should be made by the ALJ in the first instance. Finally, and although Plaintiff asks that this Court remand this

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the paragraph B criteria, particularly the areas of interacting with others and adapting and managing oneself, the Court does not consider those claims. However, although not raised by the parties, the Court notes that the ALJ omitted any reference to supervisors in the 2023 decision. On remand, the ALJ should address Plaintiff's ability to interact with supervisors. *See Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others.").

matter to a different ALJ, *Plaintiff's Initial Brief*, ECF No. 6, p. 29 ("Respectfully, plaintiff requests this matter be remanded to the Commissioner to render a fully favorable decision or in the alternative remand this matter to a different ALJ for an oral hearing with instructions the new ALJ not substitute their own lay opinion as evidence and apply all of the relevant and probative evidence contained in the treating doctor's and therapist's patient charts and all 3 Social Security experts reports to all steps of the Sequential Evaluation Process and not play doctor by giving medical significance to the claimant's ability to interact with doctors."), Plaintiff has not persuaded this Court that this record warrants such an order. *See Correa ex rel. Correa v. Comm'r of Soc. Sec.*, 381 F. Supp. 2d 386, 398 (D.N.J. 2004) (refusing to remand action to a new ALJ where the assigned ALJ did not engage in "the level of offensiveness and unprofessional conduct established in" prior case authority, there was "no evidence that the ALJ acted in an unfair and biased manner", the ALJ "did not display extreme impatience or condescension during the hearing", and "[t]he attorneys did not endure the verbal taunts").

### VI. CONCLUSION

**WHEREUPON**, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 13, 2025                         *s/Norah McCann King*
                                            NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE